**E-Filed 9/12/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>                Plaintiff,<br><br>    v.<br><br>CRAIG THORNER,<br><br>                Defendant. | Case Number C 06-2823 JF (RS)<br><br>ORDER[1] GRANTING IMMERSION'S MOTION FOR JOP WITH LEAVE TO AMEND<br><br>[Re: Doc. No. 12] |

Plaintiff and Counterdefendant Immersion Corporation ("Immersion") moves for judgment on the pleadings with respect to the first and third claims set forth in the counterclaim asserted by Defendant and Counterclaimant Craig Thorner ("Thorner"). The court has considered the parties' briefing as well as the oral arguments presented at the hearing on September 1, 2006. For the reasons discussed below, Immersion's motion will be granted with leave to amend.

---

[1] This disposition is not designated for publication and may not be cited.

# I. BACKGROUND

Immersion is a developer and licensor of tactile feedback technology -- technology that allows people to interact with computers using their sense of touch. Thorner, a computer programmer in the area of vibro-tactile technology, owns several patents including United States Patent No. 5,684,722 ("the '722 patent"). In April 2003, Immersion and Thorner entered into an agreement that, *inter alia*, granted Immersion the exclusive right to license the '722 patent to third parties ("the Thorner License Agreement"). Under the Thorner License Agreement, Immersion agreed to pay Thorner fifty percent of all revenues realized from any license involving of the '722 patent.

In July 2003, approximately three months after signing the Thorner License Agreement, Immersion settled a lawsuit with Microsoft. Pursuant to that settlement agreement ("the Microsoft Settlement Agreement"), Immersion granted Microsoft a "worldwide, perpetual, paid-up, irrevocable, non-terminable, royalty-free and non-exclusive license under the Licensed Patents." Licensed Patents are defined to include all licenses in which Immersion has the right to grant licenses, with the exception of "Conditional Patents." A Conditional Patent is defined as one where the grant of a license "results in an obligation to pay, or the payment of, additional royalties by Immersion" to third parties.

In May 2005, Thorner executed a Deal Point Memorandum, summarizing deal points between Thorner and third party Electro Source LLC ("Electro Source"). In that memorandum, Thorner agreed to grant Electro Source a license to a number of patents, including the '722 patent. Thorner and Electro Source executed the contemplated licensing agreement in June 2005, under which Thorner granted Electro Source a worldwide, nonexclusive license to the '722 patent.

Immersion filed the instant action against Thorner in the Santa Clara Superior Court in March 2006, alleging breach of the Thorner License Agreement. Thorner removed to this Court on the basis of diversity of citizenship, and subsequently filed an answer and counterclaim. The instant motion addresses the first and third claims of the counterclaim, asserting breach of contract and fraud respectively. The contract claim alleges that Immersion licensed the '722

patent to Microsoft for $35 million under the Microsoft Settlement Agreement but failed to report this to Thorner and failed to pay him fifty percent of the revenues derived therefrom.  The fraud claim alleges that Immersion fraudulently misrepresented to Thorner that there was no license in the '722 patent granted to Microsoft.

## II. LEGAL STANDARD

The standard applicable to a motion for judgment on the pleadings is essentially the same as that applicable to a motion to dismiss.  In reviewing a motion for judgment on the pleadings, the Court views the facts presented in the light most favorable to the plaintiff, accepting as true all the allegations in the complaint and treating as false those allegations in the answer that contradict the plaintiff's allegations.  *Hoeft v. Tucson Unified School District*, 967 F. 2d 1298, 1301 n. 2 (9th Cir. 1992); *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F. R. D. 477, 479 (C.D. Cal. 1993).

## III. DISCUSSION

Both the contract and fraud claims at issue turn upon the premise that Immersion licensed the '722 patent to Microsoft under the Microsoft Settlement Agreement but failed to notify Thorner and failed to pay Thorner fifty percent of the revenues generated by the licensing of the '722 patent to Microsoft.  Immersion argues that this premise is directly contradicted by the express language of the Microsoft Settlement Agreement.  The Court may consider the Microsoft Settlement Agreement under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Cir. 2005).

As noted above, the Microsoft Settlement Agreement granted Microsoft licenses in all patents Immersion has the right to license, with the exception of "Conditional Patents." Immersion contends that the '722 patent is a "Conditional Patent" and thus that no license in the '722 patent was granted to Microsoft.  Thorner contends that the '722 patent is not a "Conditional Patent" and thus that Microsoft did in fact obtain a license to the '722 patent.

Immersion's motion thus turns on a question of contract interpretation, specifically, whether the '722 patent is a Conditional Patent under the Microsoft Settlement Agreement. When interpreting the agreement, the Court must look to its "plain meaning." *See Buckley v.*

1  *Terhune*, 441 F. 3d 688, 695 (9th Cir. 2006).  Only if the contract language is ambiguous does
2  the Court attempt to determine the intent of the parties.  *Id.*

3        The Court concludes as a matter of law that the term "Conditional Patent" is not
4  ambiguous as used in the Microsoft Settlement Agreement.  A Conditional Patent is defined as
5  one where the grant of a license "results in an obligation to pay, or the payment of, additional
6  royalties by Immersion" to third parties.  This language is entirely clear:  if the grant of a license
7  causes Immersion to have to pay third parties any royalties it otherwise would not have to pay,
8  the underlying patent is a Conditional Patent.  Because licensing the '722 patent to Microsoft
9  would trigger an obligation on the part of Immersion to pay Thorner fifty percent of whatever
10 royalties result from such license, the '722 patent by definition is a Conditional Patent.

11       Thorner construes the "additional royalties" language to mean royalties in addition to
12 those that would be owed under a pre-existing agreement between Immersion and the third party.
13 Thorner argues that because the licensing of the '722 patent to Microsoft would trigger only
14 Immersion's pre-existing obligation to pay him fifty percent of royalties, but would not trigger
15 any obligation on the part of Immersion to pay him *additional* monies on top of the fifty percent,
16 the '722 patent is not a Conditional Patent within the meaning of the Microsoft Settlement
17 Agreement.  Thorner's reading is implausible.  The "additional royalties" language must be
18 construed in the context of the Microsoft Settlement Agreement in which it appears; from
19 context, it is clear that "additional royalties" are those that Immersion would be obligated to pay
20 absent the Microsoft Settlement Agreement.  Thorner's argument that a pre-existing contract to
21 pay a percentage of royalties somehow takes the '722 patent out of the realm of Conditional
22 Patents simply does not make sense.

23       Thorner makes an additional argument that under the Microsoft Settlement Agreement
24 Microsoft has the option to negotiate for licenses of Conditional Patents, and that this option
25 somehow triggered an obligation on the part of Immersion to pay royalties.  There is no
26 allegation that Microsoft in fact negotiated for a license in the '722 patent under this provision,
27 and Thorner has not provided any legal basis for concluding that the mere fact that Microsoft has
28 the option to conduct such a negotiation is sufficient to trigger an obligation on the part of

1  Immersion to pay royalties to Thorner.

2  Because Thorner's first and third claims turn upon the premise that Immersion licensed the '722 patent to Microsoft under the Microsoft Settlement Agreement, and this premise is expressly contradicted by the agreement itself, the Court will grant Immersion's motion for judgment on the pleadings as to both claims.

During oral argument, counsel for Thorner argued that Thorner's first claim for breach of contract is not based solely on Immersion's failure to report issuance of a license to the '722 patent and to pay the agreed-upon percentage of such license, but also is based upon Immersion's failure to meet other reporting obligations under the Thorner Licensing Agreement. The Court has read Thorner's contract claim carefully, including the allegation that "Immersion failed to provide written reports as required by the [Thorner Licensing] Agreement." Counterclaim ¶ 54. When this allegation is read in the context of the claim as a whole, it appears that the reporting claim is based upon failure to report licensing under the Microsoft Settlement Agreement. To the extent that Thorner intended his contract claim to read more broadly, he failed to make this clear or to allege sufficient facts. The Court therefore will afford Thorner leave to amend his contract claim in order to allege violations of Immersion's reporting requirements that do not flow from the failure to report the Microsoft Settlement Agreement.

## IV. ORDER

Defendant's motion for judgment on the pleadings is granted with leave to amend as set forth above.

DATED: 9/12/06

_____
JEREMY FOGEL
United States District Judge

1  A copy of this Order was served on the following persons:

2

3  Richard M. Birnholz rbirnholz@irell.com, dlieberman@irell.com; lwakino@irell.com

4

5  Morgan Chu mchu@irell.com

6  Alan J. Heinrich aheinrich@irell.com

7  Jeffrey P. Widman jpwidman@comcast.net

Case No. C 06-2823 JF (RS)
ORDER GRANTING IMMERSION'S MOTION FOR JOP
(JFLC2)