**E-Filed 1/29/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CRAIG THORNER,<br><br>　　　　　　　Defendant. | Case Number C 06-2823 JF (RS)<br><br>ORDER[1] DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[re:  doc. no. 43] |

Defendant Craig Thorner ("Thorner") seeks summary judgment with respect to the complaint of Plaintiff Immersion Corporation ("Immersion").  The complaint alleges a single claim for breach of contract.  The Court has considered the briefing of the parties as well as the oral arguments presented at the hearing on January 26, 2007.  For the reasons discussed below, the motion will be denied.

**I. BACKGROUND**

Immersion is a developer and licensor of tactile feedback technology.  Thorner, a computer programmer in the area of vibro-tactile technology, owns several patents including

---

[1] This disposition is not designated for publication and may not be cited.

United States Patent No. 5,684,722 ("the '722 patent").  In April 2003, Immersion and Thorner entered into an agreement that, *inter alia*, granted Immersion the exclusive right to license the '722 patent to third parties ("the Thorner-Immersion License Agreement").  Under the Thorner-Immersion License Agreement, Immersion agreed to pay Thorner fifty percent of all revenues realized from any licensing of the '722 patent.

In May 2005, Thorner executed a Deal Point Memorandum, summarizing deal points between Thorner and third party Electro Source LLC ("Electro Source").  In that memorandum, Thorner agreed to grant Electro Source a license to a number of patents, including the '722 patent.  Thorner and Electro Source executed the contemplated licensing agreement in June 2005.

Immersion filed the instant action against Thorner in the Santa Clara Superior Court in March 2006, alleging breach of the Thorner-Immersion License Agreement.  Immersion alleges that although the Thorner-Immersion License Agreement grants Immersion the exclusive right to license the '722 patent to third parties, Thorner subsequently licensed the '722 patent to Electro Source.

Thorner removed the action to this Court on the basis of diversity of citizenship, and subsequently filed an answer and counterclaim, alleging claims for:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) promissory fraud; (5) breach of fiduciary duty; and (6) negligent misrepresentation.  On September 12, 2006, the Court granted Immersion's motion for judgment on the pleadings with leave to amend as to Thorner's claims for breach of contract and fraud.  Thorner did not amend his counterclaim; accordingly those claims have been dismissed from the case.  On January 12, 2007, Thorner filed a motion for leave to amend his answer and counterclaim to add a new affirmative defense of judicial estoppel and new claims for breach of contract, breach of the implied covenant of good faith and fair dealing and rescission.  That motion is set for hearing on February 16, 2007 and is not addressed in this order.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

### III. DISCUSSION

Thorner contends that Immersion is judicially estopped from asserting a breach of the Thorner-Immersion License Agreement based upon Thorner's alleged licensing of the '722 patent to Electro Source.  As an initial matter, the Court notes that Thorner has not pled judicial estoppel as an affirmative defense, although Thorner does seek to add this defense in his pending motion for leave to amend his answer and counterclaim.  Because Immersion has addressed Thorner's motion on the merits, and because the Court concludes that Thorner is not entitled to summary judgment even assuming that judicial estoppel properly may be asserted as a defense, the Court  will reach the merits of the judicial estoppel issue at this time even though judicial estoppel has not as yet been pled specifically  as a defense.

"Federal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon*, 141 F.3d 1361, 1364 (9th Cir. 1998).  "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)).  The purpose of the doctrine is to protect the integrity of the judicial process. *Id.* at 749-50.  While the

1   circumstances under which the doctrine may be applied cannot be encompassed by any particular

2   rule, the following three factors typically inform a court's decision whether to apply the doctrine

3   in a particular case.  "First, a party's later position must be 'clearly inconsistent' with its earlier

4   position." *Id.* at 750.  The second factor is whether the earlier position was accepted by a court,

5   such that judicial acceptance of the later position would create a perception that either the first

6   court or the second court was misled.  *Id.*  "A third consideration is whether the party seeking to

7   assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on

8   the opposing party if not estopped." *Id.* at 751.

9       In the instant case, Thorner contends that judicial estoppel should be applied in light of

10  Immersion's conduct during a prior lawsuit between Immersion and Sony Computer

11  Entertainment America, Inc. ("Sony").  In September 2004, a jury found that Sony had infringed

12  a number of Immersion's patents and awarded Immersion $82 million in damages.  Following

13  entry of judgment, Sony filed a motion for relief from judgment pursuant to Federal Rule of Civil

14  Procedure 60(b).  Sony's motion was supported by several declarations from Thorner, in which

15  Thorner stated that he had conspired with Immersion representatives to conceal from the court

16  and from Sony prior art that would be damaging to Immersion's case.  Thorner further stated that

17  in exchange for his part in the conspiracy, Immersion promised to share with him any damages it

18  recovered against Sony.  In response to Sony's Rule 60(b) motion, the district court reopened

19  discovery.  During that discovery process, Immersion learned of Thorner's licensing agreement

20  with Electro Source, and that the Thorner-Electro Source deal had hinged on Thorner's

21  submitting declarations on behalf of Sony in connection with Sony's Rule 60(b) motion.  Finally,

22  Immersion learned that *Sony* actually was the source of the $150,000 that Electro Source paid

23  Thorner for the licensing agreement.  Apparently, Sony's general counsel wired $150,000 to

24  Electro Source's outside counsel, who sent a cashier's check for $150,000 to Sony's outside

25  litigation counsel, who personally handed the check to Thorner at a meeting dealing with the

26  wording of Thorner's declarations on behalf of Sony in connection with the Rule 60(b) motion.

27      Immersion argued to the district court presiding over the Immersion-Sony litigation that

28  Thorner's testimony regarding the alleged conspiracy to hide prior art was perjured and in fact

1  appeared to have been *purchased* by Sony.  The court accepted these arguments, finding that

2  Thorner had understood the Electro Source deal to be quid pro quo for his testimony against

3  Immersion, and that the Electro Source deal was a sham agreement lacking a legitimate business

4  purpose.  The court found that in light of all the evidence, "Thorner is too unreliable a witness to

5  enable Sony to meet its burden to prove by clear and convincing evidence that Immersion

6  engaged in misconduct."

7        In the instant motion, Thorner appears to contend that because Immersion previously

8  argued that the Electro Source licensing agreement was a sham deal for the purpose of conveying

9  a $150,000 bribe from Sony to Thorner, Immersion cannot now argue that the Electro Source

10 licensing agreement was a breach of the Thorner-Immersion License Agreement.  The Court

11 disagrees.  The fact that Immersion previously identified the Electro Source licensing agreement

12 as a vehicle for Sony's delivery of a bribe to Thorner is not "clearly inconsistent" with

13 Immersion's current position that Thorner *in fact* granted Electro Source a license to the '722

14 patent.  Immersion never argued in the prior litigation that Electro Source did not in fact receive a

15 license to the '722 patent, and the court did not make any finding as to whether the license to

16 Electro Source was valid.  Thorner has not presented any evidence that Electro Source was *not*

17 granted a license to the '722 patent.  Accordingly, it seems entirely possible that in executing the

18 Electro Source deal Thorner *both* accepted payment for perjured testimony *and* granted Electro

19 Source a license to the '722 patent in violation of the Thorner-Immersion License Agreement.

20 Finally, the Court cannot perceive how Immersion will gain any kind of "unfair advantage" if it

21 is not estopped from arguing breach of the Thorner-Immersion License Agreement.  Thorner's

22 theory seems to be that since Immersion successfully argued that Thorner was bribed for perjured

23 testimony in the *Sony* litigation, Immersion should not also be allowed to pursue its contract

24 remedies against Thorner in *this* litigation.  This simply is not the type of "unfairness" that the

25 judicial estoppel doctrine is designed to present.

26       At the hearing, counsel for Thorner argued for the first time that the Thorner-Electro

27 Source deal did *not* in fact grant Electro Source a license to the '722 patent.  Immersion stated

28 that it was totally surprised by this argument, because Immersion had been under the impression

1   that Thorner conceded that he had granted Electro Source a license to the '722 patent.  The issue

2   of whether the Electro Source deal included a license to the '722 patent is one that may be

3   litigated in an appropriate motion.  However, the issue has no bearing on Thorner's current

4   motion for summary judgment based upon judicial estoppel.

5        Accordingly, Thorner's motion for summary judgment will be denied.

6                              **IV. ORDER**

7        Defendant's motion for summary judgment is DENIED.

20   DATED:  1/29/07

23   JEREMY FOGEL
     United States District Judge

1   A copy of this Order was served on the following persons:

2

3   Richard M. Birnholz      rbirnholz@irell.com, lwakino@irell.com; ddrescher@irell.com

4

5   Morgan Chu      mchu@irell.com

6

7   Alan J. Heinrich      aheinrich@irell.com

8   Jeffrey P. Widman      jpwidman@comcast.net

9

10  Glen M. Diehl
    Diehl Servilla LLC
11  77 Brant Avenue
    Clark, NJ 07066
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28